**IT IS ORDERED as set forth below:**

**Date: August 22, 2019**

_____

**Sage M. Sigler
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **CASE NO.:** |
| | : | |
| **VIRGINIA SUE LINDSTROM,** | : | **17-53265-SMS** |
| | : | |
| Debtor. | : | Chapter 7 |
| _____ | : | |
| | : | |
| **CATHY L. SCARVER, TRUSTEE,** | : | **ADVERSARY PROCEEDING NO.:** |
| | : | |
| Plaintiff, | : | **18-05174-SMS** |
| v. | : | |
| | : | |
| **PINGORA LOAN SERVICING, LLC
AND LOANDEPOT.COM, LLC,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The above-styled matter is before the Court on cross-motions for summary judgment filed by the Chapter 7 Trustee (the "Trustee") and Pingora Loan Servicing, LLC ("Pingora") and LoanDepot.com, LLC ("LoanDepot" and, collectively with Pingora, the "Defendants"). Having considered the briefs and materials submitted in support of the motions, and the oppositions thereto, the Court grants the Trustee's Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment. This Order memorializes the Court's decision and constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and venue is proper. The Bankruptcy Court has authority to enter a final determination in this matter.

## I. Procedural Posture

Virginia Sue Lindstrom ("Debtor" or "Borrower") filed a voluntary chapter 7 petition on February 22, 2017. (Bankr. Case No. 17-53265-SMS, Doc. 1). Debtor received a discharge on June 19, 2017. (*Id.* at Doc. 12). The Trustee initiated this adversary proceeding by filing a Complaint against Defendants on July 25, 2018. (Doc. 1).[1] Summons was issued on July 26, 2018, and on August 1, 2018, the Trustee filed a *Certificate of Service* indicating that Defendants were served with process. (Docs. 2, 3). Pingora filed its *Answer* to the Complaint on August 22, 2018. (Doc. 4). On September 7, 2018, the Trustee filed her *Restated Complaint*, and Defendants each filed an *Answer* to the Restated Complaint on September 21, 2018. (Docs. 5-7).

On December 14, 2018, Defendants and the Trustee each filed a *Motion for Summary Judgment* along with their supporting pleadings (the "Defendants' Motion," Doc. 11, the "Trustee's Motion," Doc. 12, and collectively, the "Motions"). On January 4, 2018, the Trustee

---

[1] Unless otherwise specified, docket citations reference the docket in the adversary proceeding.

filed her *Response to Defendants' Motion for Summary Judgment* (the "Trustee's Response," Doc. 13) and her *Response to Statement of Uncontested Facts* (the "Trustee's Response to Statement of Uncontested Facts," Doc. 14), and Defendants filed their *Response to Plaintiff's Motion for Summary Judgment* (the "Defendants' Response," Doc. 15, and, collectively with the Trustee's Response and Trustee's Response to Statement of Uncontested Facts, the "Responses"). On January 18, 2019, Defendants filed their *Reply to Plaintiff's Response* (the "Defendants' Reply," Doc. 16), and the Trustee filed her *Reply to Defendants' Response* (the "Trustee's Reply," Doc. 17, and, together with Defendants' Reply, the "Replies"). On May 15, 2019, the Court heard oral arguments on the Motions, the Responses, and the Replies. On May 20, 2019, the Trustee sent letter correspondence to the Court via e-mail, which the Court construes as a post-hearing supplemental brief (the "Trustee's Letter Brief," Doc. 20, Ex. A), and Defendants filed their *Objection and Response to Plaintiff's May 20, 2019, Letter Brief to the Court* (the "Defendants' Objection," Doc. 20). On May 22, 2019, the Trustee filed her *Reply to Response of Defendants' to Plaintiff's May 20, 2019 Letter Brief to the Court* (the "Trustee's Reply Brief," Doc. 21, and, collectively with the Trustee's Letter Brief and Defendants' Objection, the "Post-Hearing Briefs").

## II.    Facts

The following facts are undisputed. On June 10, 2005, Debtor acquired ownership in the real property located at 956 Subhill Court, Lawrenceville, GA 30043 (the "Property") by virtue of a warranty deed. (Doc. 12-2, ¶ 1). On or about August 10, 2015, Debtor executed a security deed (the "Security Deed") in favor of LoanDepot to secure a debt in the amount of $174,500.00. (Doc. 11-1, ¶ 4; 12-2, ¶ 2). The Security Deed was filed in the real property records of Gwinnett County, Georgia on August 19, 2015, and recorded on pages 238 through 258 of Deed Book number 53766. (Doc. 11-1, ¶ 6; Doc. 12-2, ¶ 2).

Debtor signed the Security Deed on Deed Book Page 250 (the "Attestation Page") as "Borrower." (Doc. 11-1, ¶ 10; Doc. 14, ¶ 10). The Signature Page also contains the signature of Dorothy S. Lindstrom ("Ms. Lindstrom") as "Unofficial Witness." (Doc. 11-1, ¶ 9; Doc. 14, ¶ 10). The last page of the Security Deed (Deed Book, Page 251) is a notary acknowledgment (the "Acknowledgment") dated August 10, 2015, that contains the printed name and signature of Elliott Braxton Smith ("Mr. Smith"), a notary public, as well as his notary seal. (Doc. 11-1, ¶ 11; Doc. 14, ¶ 11).

Recorded contemporaneously with the Security Deed in the Deed Book at Pages 253 through 255 is an Acknowledgement and Waiver of Borrower's Rights Rider (the "Rider"), which includes a Closing Attorney's Affidavit (the "Affidavit"). (Doc. 11-1, ¶¶ 12,16; Doc. 14, ¶¶ 12, 16). The Rider states on the first page that it is "incorporated into and shall be deemed to amend and supplement the … Security Deed." (Doc. 11-1, p. 24). The Affidavit appears on page 3 of the same document and it includes the following language:

> In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of the Borrower's Rights" …. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

(Doc. 11-1, ¶ 16, p. 26; Doc. 14 at ¶ 16).[2] The Rider, dated August 10, 2015, is signed by Debtor

---

[2] The Trustee does not contest the language included in the Closing Attorney's Affidavit, the date of the document, or the identity of the signatory thereto. (Doc. 14 at ¶ 16). However, the Trustee "denies that the Closing Attorney's Affidavit is a part of, or a continuation of the Acknowledgment and Waiver of Borrower's Rights Rider," and "further denies that the Closing Attorney testified to the Debtor's execution of the Security." *Id.*

as "Borrower," Ms. Lindstrom as an "Unofficial Witness," and signed and notarized by Mr. Smith. (Doc. 11-1, ¶¶ 13-15; Doc. 14, ¶¶ 13-15). The Affidavit, also dated August 10, 2015, contains the signature of Mr. Smith as "Closing Attorney," and is signed and notarized by Hall County public notary, Cory Borgerding. (Doc. 11-1, ¶¶ 16-17; Doc. 14, ¶¶ 16-17).[3]

Debtor filed a voluntary chapter 7 petition on February 22, 2017. (Doc. 11-1, ¶ 2; Doc. 12-2, ¶ 3). On or about March 28, 2017, the Trustee became the permanent chapter 7 trustee for the bankruptcy estate. (Doc. 11-1, ¶ 3; Doc. 12-2, ¶ 4). The Trustee filed her "Notice of Bankruptcy Filing and Claim of Chapter 7 Trustee" in the Gwinnett County Real Property Records on September 14, 2017, in Deed Book number 55539, page 128. (Doc. 12-2, ¶ 6). On November 20, 2017, an assignment transferring the Security Deed from LoanDepot to Pingora was recorded in the Gwinnett County Real Property Records in Deed Book number 55539, page 337. (Doc. 11-1, ¶ 4; Doc. 12-2, ¶ 7).

On September 7, 2018, the Trustee filed the Restated Complaint seeking to avoid the secured interest of LoanDepot pursuant to 11 U.S.C. § 544 and recover the Property or its value from Defendants for the benefit of the estate under 11 U.S.C. §§ 550 and 551.[4] (Doc. 5). The Trustee alleges that the Security Deed is patently defective because it lacks the signature of an attesting official witness as required by O.C.G.A. § 44-14-33 and, therefore, its recordation failed

---

[3] The Trustee does not contest that the Affidavit contains the signature and the notary seal of Cory Borgerding, but "denies that the Closing Attorney's Affidavit is a part of, or a continuation of the Acknowledgment and Waiver of Borrower's Rights Rider." (Doc. 14, ¶ 17).

[4] The Motions do not address the value of the Property should the Trustee be unable to recover the Property itself. Count IV of the Restated Complaint also seeks to recover from Defendants all post-petition mortgage payments made by Debtor on account of the Security Deed, but neither the Trustee nor Defendants sought summary judgment with respect to this Count. These issues are not addressed in this Order and will remain pending claims as alleged in the Restated Complaint.

to provide constructive notice to subsequent bona fide purchasers, making it avoidable under 11 U.S.C. § 544(a)(3). *Id.* Defendants do not deny that the Security Deed is patently defective, but contend any defect was cured in compliance with the requirements of the remedial provision of O.C.G.A. § 44-2-18 because Mr. Smith's Affidavit testifies to the execution and attestation of the Security Deed. (Doc. 16, p. 2). The Trustee disputes Mr. Smith's status as a subscribing witness and contends that the Affidavit does not comply with O.C.G.A. § 44-2-18.

### III.    Legal Analysis

#### A.  Summary Judgment Standard

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 56 of the Federal Rules of Civil Procedure, a grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the "initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *accord, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court must resolve a motion for summary judgment by viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985); *Lubin v. Cincinnati Ins. Co.*, 2010 WL 5313754, at *4 (N.D. Ga. Dec. 17, 2010) (citing *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002)).  As set forth above, the material facts are not in dispute and thus the Court will determine whether either party has established its entitlement to judgment as a

matter of law.

## B. Avoidance Under 11 U.S.C. § 544

Section 544(a)(3) of the Bankruptcy Code provides that the trustee

> may avoid any transfer of the property of the debtor … that is voidable by a bona fide purchase of real property … from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). The Trustee argues that the Security Deed was ineligible for recordation under Georgia law because it reflects only one attesting witness and, therefore, failed to give constructive notice to a bona fide purchaser, rendering it avoidable.

### i. O.C.G.A. § 44-14-33: The Recording Statute

O.C.G.A. § 44-14-33 (the "Recording Statute") provides that a security deed "must be attested by an officer as provided in Code Section 44-2-15, and attested by one other witness."[5] In other words, a Security Deed requires two attestations. Absent two attestations, a security deed is patently defective, and a bona fide purchaser is not subject to such a security deed, even if recorded, because it does not provide constructive notice to the bona fide purchaser. *In re Perry*, 565 B.R. 442, 444 (Bankr. M.D. Ga. 2017) (citing *Trauner v. First Tennessee Bank, N.A. (In re Simpson)*, 544 B.R. 913, 918 (Bankr. N.D. Ga. 2016); *Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 475, 749 S.E.2d 368 (2013)).

It is undisputed that the Security Deed in this case is patently defective. The Attestation

---

[5] The Recording Statute was amended in 2015. Prior to the 2015 amendment, the Recording Statute provided that a security deed "must also be attested by **or acknowledged** before an officer" for proper recordation. O.C.G.A. § 44-14-33 (2010). The 2015 amendment removed the acknowledgment language and, effective July 1, 2015, the Statute expressly requires two attestations for proper recordation. The Security Deed at issue was executed on August 15, 2015 and recorded on August 19, 2015, and, therefore, the post-amendment version of the Recording Statute applies.

Page reflects only the signatures of the Borrower and one attesting witness, Ms. Lindstrom. However, Defendants argue that any defect was cured in compliance with the requirements of the remedial provisions of O.C.G.A. § 44-2-18 (the "Remedial Statute"). Specifically, Defendants contend that the Affidavit signed by Mr. Smith, attached to the Rider that was recorded contemporaneously with the Security Deed, cured the defect because Mr. Smith is a subscribing witness who testified to the execution and attestation of the Security Deed.

### ii. O.C.G.A. § 44-2-18: The Remedial Statute

The Remedial Statute provides that:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code Section shall be held sufficient in the absence of all suspicion of fraud.

O.C.G.A. § 44-2-18 (2016).

At oral argument, the parties clarified to the Court that their sole dispute is whether Mr. Smith is a subscribing witness who could testify to the execution of the security deed and its attestation. But following oral argument, the Trustee argued in the Letter Brief that the Remedial Statute is unavailable to Defendants. (Doc. 20, Ex. A; Doc. 21). The Trustee contends that the Remedial Statute is unavailable with respect to a security deed that is "acknowledged" based on the "plain unambiguous language" of the Remedial Statute, which provides that a security deed may be recorded upon the affidavit of a subscribing witness "[i]f a deed is *neither* attested by *nor* acknowledged …." *Id.* Because the Security Deed was acknowledged by Mr. Smith, the Trustee argues that the Remedial Statute is not available to cure the defect in the Security Deed. The Trustee clarifies that the Remedial Statute was available to cure the defect in the security deed in

*Kim*[6] because, without the notary seal, the security deed was not effectively attested, nor was there an acknowledgement. *Id.* The Court is not persuaded.

The Trustee's interpretation of the Remedial Statute ignores its history and its practical application. Prior to 2015, the Recording Statute permitted attestation ***or*** acknowledgment of the security deed before an officer prescribed in O.C.G.A § 44-2-15 for proper recordation. O.C.G.A. § 44-14-33. Effective July 1, 2015, the Recording Statute no longer allows for "acknowledgement," and, as currently written, expressly requires two attestations for proper recordation. Legislative history indicates that the 2015 removal of the acknowledgement language from the Recording Statute was to "clarify that only attestation will suffice in recording and executing [security deeds]." Ga. H.R. Daily Rep., 2015 Reg. Sess. No. 40 (April 7, 2015). The Remedial Statute has not been amended to mirror the language of the amended Recording Statute. The Remedial Statute continues to track the language of the pre-2015 Recording Statute and, therefore, the acknowledgment language remains. This does not mean that the Remedial Statute is now inapplicable to security deeds that were acknowledged but remain defective under the revised Recording Statute.

The Remedial Statute is a cure statute that operates in conjunction with the Recording Statute. While the Georgia legislature amended the Recording Statute and not the Remedial Statute, the legislative history behind the 2015 amendment confirms that the change was intended to impact the operation of the Recording Statute alone. Absent any Georgia case law on point, this Court concludes that, in light of the 2015 amendment to the Recording Statute, interpreting the Remedial Statute to preclude the cure of a defective attestation because there was also an

---

[6] *Gordon v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342 (11th Cir. 2009).

acknowledgment (which was allowed under the prior Recording Statute) would be antithetical to the purpose of the Remedial Statute. The Court therefore concludes that the Remedial Statute is applicable in this case.

### C. The Subscribing Witness Requirement

Having determined that the Remedial Statute is applicable, the Court must now determine whether Mr. Smith's affidavit satisfied the Statute's requirements. The Remedial Statute requires an "affidavit of a **subscribing witness** … testify[ing] to the execution of the deed **and its attestation** according to law." O.C.G.A. § 44-2-18 (emphasis added). "Subscribing witness" is not defined anywhere in the Georgia Code. Black's Law Dictionary defines a "subscribing witness" as "[s]omeone who witnesses the signatures on an instrument and signs at the end of the instrument to that effect." *Subscribing Witness*, BLACK'S LAW DICTIONARY (11th ed. 2019). It further provides that "subscribing witness" is also termed "attesting witness." *See Attesting Witness*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Attesting witness" is defined as "[s]omeone who vouches for the authenticity of another's signature by signing an instrument that the other has signed." *Id.* As gleaned from Georgia case law, "subscribing witness" in the context of the Remedial Statute refers to one who "witness[es] the actual execution of a paper, and subscrib[es] one's name as a witness to that fact," i.e., an attestation. *Gilliam v. Burgess*, 169 Ga. 705, 707, 151 S.E. 652, 653 (1930); *see also White v. Magaraham*, 87 Ga. 217, 219 13 S.E. 509, 510 (1891), *overruled on other grounds by Leeds Bldg. Prods, Inc. v. Sears Mortg. Corp,* 267 Ga. 300, 301, 577 S.E. 2d 565, 568 (2000) ("Attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact."). In other words, for Mr. Smith to be a "subscribing witness," he must have witnessed the Borrower sign the security deed and the Affidavit must testify to that effect.

The Trustee argues that because Mr. Smith failed to sign as a witness on the Attestation Page of the Security Deed, and because the Affidavit does not affirmatively state that Mr. Smith himself witnessed the execution of the Security Deed, Mr. Smith is not a subscribing witness and the Affidavit does not substantially comply with the Remedial Statute to cure the defect in the Security Deed. Defendants allege that Mr. Smith is a subscribing witness because he signed the Rider as a witness, which was expressly incorporated into the Security Deed and recorded therewith. Defendants rely on *Gordon v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342 (11th Cir. 2009), a case in which the Eleventh Circuit closely examined the components of the Remedial Statute in the context of an affidavit similar to the one here.

In *Kim*, the security deed the trustee sought to avoid had two attesting witnesses' signatures on the attestation page, including the signature of the closing attorney as a notary, but it lacked the official notary seal. *Kim*, 571 F.3d at 1344. The accompanying affidavit stated that "I reviewed with and explained to the Borrower(s) the terms and provisions" of the loan and "[a]fter said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and 'Waiver of Borrower's Right.'" *Id.* at 1345-46. The affidavit was signed by the closing attorney, a separate notary, and includes the notary's seal. *Id.* at 1346. The bankruptcy court held that the affidavit failed to satisfy the requirements of the Remedial Statute because the affiant testified only to the execution of the deed and not to its attestation. *Id.* The Eleventh Circuit disagreed and explained that although the attestation page lacked the notary seal, based on the language in the accompanying affidavit and because the closing attorney's signature is present on the attestation page, the closing attorney was in effect testifying that he witnessed the borrower execute the security deed. *Id.* at 1346-47.

This case differs from *Kim* in two respects. First, While the language of the affidavits in

this case and in Kim is extremely similar, it is not identical. In Kim, the affidavit states that "I reviewed with and explained to the Borrower(s) … After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights.'" Id. at 1345 (emphasis added). The Affidavit in this case states that "I or a representative of the firm reviewed with and explained to the Borrower(s) … After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and 'Acknowledgment and Waiver of Borrower's Rights.'" (Doc. 11-1, p. 26) (emphasis added). The additional "or a representative of the firm" language included in the Affidavit here makes it plausible that another representative of the firm, and not Mr. Smith, explained the terms of the Security Deed and the Rider to the Borrower and witnessed the execution of the Security Deed.

Second, the Attestation Page lacks Mr. Smith's signature entirely, whereas in *Kim*, two attesting witnesses had signed the attestation page, but it was not properly notarized.[7] Some courts have interpreted *Kim* to mean that an affidavit of a subscribing witness can cure only a defective attestation, not an omitted one. *Perry*, 565 B.R. at 448 ("an affidavit [of a subscribing witness] cannot supplement a security deed to add a signature of an official witness [whose] signature is completely absent from the security deed"); *see also Simpson*, 544 B.R. at 921 ("[t]he attestation of the waiver cannot be substituted for the proper attestation of the security deed"). But it is not necessary for this Court to extend its holding that far, and the Court declines to do so. In *Kim*, the

---

[7] On that basis, the Trustee points to *Gordon v. Wells Fargo Bank, N.A. (In re Knight)*, 504 B.R. 668 (Bankr. N.D. Ga. 2014), where the Court determined that the closing attorney's affidavit failed to cure the defect in the security deed, in part, because the attorney's signature was entirely absent from the attestation page of the security deed (the *Knight* court also had serious concerns regarding the chain of signatures connecting the security deed to the affidavit that are not present in this case). However, the defect in the *Knight* security deed was the absence of an *unofficial* attesting witness' signature and the court held that the Remedial Statute only "permitted a cure if the *official* signature was missing," rendering the Remedial Statute inapplicable. *Id.* at 673. Here, the defect is the absence of an *official* attesting witness' signature and the holding in *Knight* is therefore inapposite.

closing attorney who signed the affidavit also signed the attestation page as a notary, albeit in a defective manner because it was missing the notary seal. However, by virtue of his signature as the notary on the attestation page, the Eleventh Circuit determined that the closing attorney actually witnessed the execution of the security deed and could thus act as a subscribing witness under the Remedial Statute. As a result, the Eleventh Circuit found that the closing attorney's affidavit attested to both the execution of the security deed (by virtue of the language of the affidavit) and its attestation (by virtue of the closing attorney's presence at the execution of the security deed as demonstrated by his notary signature). *Kim*, 571 F.3d at 1347. This Court does not read *Kim* to opine on whether the Remedial Statute allows an affidavit to cure an omitted attestation as opposed to a defective one.

Nevertheless, without a statement testifying that Mr. Smith in fact witnessed the execution of the Security Deed, Mr. Smith cannot be a subscribing witness and he cannot testify to the Deed's attestation as required by the Remedial Statute. Mr. Smith's signature appears only on the Acknowledgment and the Affidavit attached to the Rider. (*See* Doc. 5, Ex. A). Though the Acknowledgement is on the last page of the Security Deed and could thus be viewed as part of the Security Deed, acknowledgement is not an attestation. "Acknowledgment is the act of a grantor in going before some competent officer and declaring the paper to be his deed." *White*, 87 Ga. at 217, 13 S.E. at 510. In other words, acknowledgment is the act of confirming the declaration of the person executing the document that they indeed executed the document. The Acknowledgment merely confirms that the Borrower executed the Security Deed. It does not confirm that Mr. Smith witnessed the execution of the Security Deed such that he would be able to testify to the same.

The Recording Statute provides that if a mortgage is duly executed and recorded, constructive notice has been provided to a subsequent bona fide purchaser. But absent proper

recordation or satisfaction of the Remedial Statute, a security deed is invalid even if all requisite actions by the parties took place, including the actual witnessing of the execution. Because the Affidavit only acknowledges—and does not attest to—the execution of the Security Deed, the requirements of the Remedial Statute have not been met. The Security Deed therefore remains defective and subject to avoidance.

### D.  The Section 550(b)(1) Defense

The Trustee's Motion also seeks summary judgment with respect to her ability to recover from LoanDepot as the initial transferee and Pingora as the immediate transferee under 11 U.S.C. § 550(a) and, specifically, seeks a determination that Pingora cannot avail itself of the protections of § 550(b)(1). (Doc. 12, p. 11-12). Neither Defendants' Motion nor their Response or Reply to the Trustee's Motion address this argument, but Defendants both assert a § 550(b)(1) defense in their Answers to the Restated Complaint. (Doc. 6, p. 2; Doc. 7, p. 2). Section 550(a) provides that to the extent a transfer is avoided under § 544, the trustee may recover the property transferred, or its value, from the initial transferee or any immediate or mediate transferee of such initial transferee.  11 U.S.C. § 550(a). Section 550(b)(1), however, provides that a trustee may not recover from a "transferee that takes for value … in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1).

It is undisputed that LoanDepot is the initial transferee. Thus, the protections of § 550(b)(1) are unavailable to it. *See Ragsdale v. S. Fulton Machine Works, Inc. (In re Whitacre Sunbelt, Inc.)*, 200 B.R. 422, 425 (Bankr. N.D. Ga. 1996). It is undisputed that Pingora is a subsequent transferee and the Trustee has not argued that Pingora failed to provide value in connection with the transfer. However, Pingora may only avail itself of § 550(b)(1) protection if it received the transfer in good faith *and* without knowledge of the Security Deed's voidability. 11 U.S.C. § 550(b)(1). Pingora,

as the transferee, bears the burden of proof. *Kerr v. Roeser (In re Hackney)*, No. 13-5056-JRS, 2014 WL 4059787, at *1 (Bankr. N.D. Ga. April 2, 2014) (citing *Goldman v. Capital City Mort. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011)).

For purposes of § 550(b)(1), knowledge does not require a "complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 898 (7th Cir. 1988). Further, if an immediate transferee "possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels." *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1357 (8th Cir. 1995). And under Georgia law, a transferee of property is "charged with constructive notice of the contents of a recorded instrument within its chain of title." *VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga. App. 386, 391, 623 S.E. 2d 534, 539 (2005).

In analyzing good faith under § 550(b)(1), many courts consider "what the transferee objectively 'knew or should have known' instead of examining the transferee's actual knowledge from a subjective standpoint." *In re Hackney*, 2014 WL 4059787, at *5 (citing *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 (8th Cir. 1995)). "Thus transferees cannot simply bury their heads in the sand and later claim they took in good faith 'if they remain willfully ignorant in the face of facts which cry out for investigation.'" *Id.* (quoting *In re Nieves*, 648 F.3d at 241).

The Trustee argues—and the Court agrees—that the defect in the Security Deed at issue is a patent defect in that it has only one attestation on the attestation page. *See Gordon v. Wells Fargo Bank, N.A. (In re Codrington)*, 430 B.R. 287, 292 (Bankr. N.D. Ga. 2009) (A patent defect is "obvious and easily detectable. An example is a deed missing the signature of an unofficial witness."). The undisputed facts also establish that Pignora took assignment of the Security Deed

subsequent to the Trustee filing her Notice of Bankruptcy Filing and Claim of Chapter 7 Trustee (the "Notice") in the real property records. Whether Pingora actually reviewed the Security Deed or the Trustee's Notice prior to taking assignment of the Security Deed is irrelevant; Pingora was charged with constructive notice under Georgia law. The Security Deed, which is defective on its face, and the Notice "cry out for investigation" such that Pingora should have further inquired into their implications. It follows that Pingora did not take assignment of the Security deed in good faith and without knowledge of the transfer's voidability and, therefore, Pingora is not entitled to a § 550(b)(1) defense.

## IV. Conclusion

Because Mr. Smith was not a subscribing witness, the Affidavit fails to substantially comply with the Remedial Statute to cure the defect in the Security Deed. It follows that the Security Deed, as recorded, does not provide constructive notice to subsequent bona fide purchasers and the Trustee may therefore avoid the Security Deed pursuant to 11 U.S.C. § 544(a)(3) and recover the Property or its value from Defendants pursuant to 11 U.S.C. § 550. Further, because LoanDepot is an initial transferee and because Pingora had, at minimum, constructive knowledge of the transfer's voidability, Defendants are not entitled to a defense under 11 U.S.C. § 550(b)(1). Accordingly, it is

**ORDERED** that the Trustee's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 11) is **DENIED**.

The Clerk shall serve a copy of this Order upon the Trustee, Defendants, and their respective counsel.

**END OF DOCUMENT**